UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CR-0056-CVE |
| ) | |
| DEMONTE HOWARD EMBRY, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

Now before the Court is the Motion of Demonte Embry for New Trial (Dkt. # 71). Defendant Demonte Howard Embry was found guilty on September 23, 2010 of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Dkt. # 66. On December 14, 2010, Embry filed a motion for a new trial on the basis of newly-discovered evidence.

I.

Embry's conviction arose out of events occurring on March 3, 2010. On that day, two Tulsa Police Department (TPD) officers, Corporal Brian Blair and Officer Mark Wollmershauser, Jr., approached a group of four men standing in the parking lot of an apartment complex in Tulsa, Oklahoma. As the officers approached, they allegedly observed Embry remove a gun from his sweatshirt and drop it on the ground. Embry was arrested and all four men were handcuffed. The officers ran records checks on the other three men and, finding no outstanding warrants, released them. Embry had previously been convicted of four separate crimes punishable by imprisonment for a term exceeding one year. Dkt. # 2. Consequently, he was charged under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) as a felon in possession of a firearm and ammunition. Id.

Embry was tried three times. His first trial ended in a mistrial after it came to light that the United States had not produced exculpatory evidence pursuant to its duty under Brady v. Maryland, 373 U.S. 83 (1963). On June 3, 2010, Embry filed a motion for disclosure of exculpatory evidence pursuant to Brady. Dkt. # 12. Among other things, Embry requested that the United States provide the identities of the three other men at the scene. Id. at 2. Magistrate Judge T. Lane Wilson held a hearing on the motion for Brady materials on June 16, 2010. See Dkt. # 19. At the hearing, the attorney for the United States represented that the officers did not keep written logs or notes regarding the identities of the three men. She also represented that there is no paper record made when a police officer runs a record check on someone from the field. Magistrate Judge Wilson asked her "[c]an you go back and find out whether or not there are police logs or there are recordings of radio traffic during this stop?" She replied, "[s]ince [Embry's counsel] did not ask me, I haven't had a chance to ask and I will definitely ask both officers if there would be any police logs or radio traffic records during this period of time. I will find that out and communicate that to him."

On July 14, 2010, defendant filed an ex parte application for a subpoena directed to the TPD Custodian of Records for an audio recording of the records check made on March 3, 2010. The application was granted on July 15, 2010. After the jury was selected on July 19, TPD representative Sherry Jordan informed the Court that she had recently received the subpoena and had not had a chance to determine whether the requested recording existed. After several hours, Jordan located and provided the requested recording. The recording contained the names of the three other individuals at the scene on March 3, 2010.

Embry moved for a mistrial based on the United States's failure to inform Embry of or produce the audio recording. The motion for a mistrial was granted on July 19, 2010. The Court

2

made a finding that the attorney for the United States acted in good faith, but that the ends of justice required a mistrial because Embry may have been deprived of an opportunity to prepare his case.

Embry then moved to dismiss the indictment against him on the ground that the Fifth Amendment Double Jeopardy Clause barred retrial of his case. Dkt. # 32. That motion was denied because the Court found that the mistrial was granted at Embry's request, and that there had been no evidence of deception, bad faith, or "goading" of Embry into filing for a mistrial. Therefore, the Double Jeopardy Clause did not bar retrial. Dkt. # 33. On August 24, 2010, Embry's second trial ended in mistrial after the jury was unable to reach a verdict. He was tried again the following month, and the jury reached a guilty verdict on September 23, 2010. Dkt. # 66.

On December 9, 2010, Embry filed a motion for discovery. Dkt. # 68. He alleged that events occurring after trial warranted additional examination of the TPD officers involved in his case. Id. at 2-6. Specifically, he noted that the same day Corporal Blair testified against Embry in his third trial, he also testified in a motion hearing as a defense witness for TPD officers Jeff Henderson and/or Bill Yelton.[1] A newspaper article about the hearing at which Blair testified reported that Blair is a friend of Henderson, that Blair acted on tips from Henderson to investigate people who could testify against Henderson at his trial, and that, after such investigation, questions were raised about Blair's actions that prompted him to leave a note with Henderson's lawyer stating that he could no longer assist Henderson or Yelton. Dkt. # 68-3. At Embry's second trial, the Court granted a motion in limine filed by the United States to prevent defense counsel from mentioning

---

[1] An investigation of certain members of the TPD and Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), begun in about 2008, has resulted in publicity of the investigation and its results. These included the return of indictments against members of the TPD Special Investigations Division (SID) and ATF. Henderson and Yelton are defendants in a case in this court charging crimes by members of the SID.

or questioning witnesses about the ongoing TPD investigation. Dkt. # 42. This ruling was adopted at Embry's third trial as well. However, Embry claimed that if Blair's relationship with Henderson and Yelton been disclosed prior to trial, "a very different ruling might have occurred on the government's motion in limine." Dkt. # 68, at 3. And, he argued, if the jury had been permitted to hear that Blair had been a friend of Henderson and Yelton while an SID officer and that he "was actually actively working to assist in the defense of such corrupt police officers, the jury may well have viewed his testimony in a wholly different light." Id. at 3-4. Therefore, Embry asked the Court to order that he be given access to "all FBI-302 [reports] in the possession of the United States which reference either Corporal Blair or Officer Wollmershauser," a copy of Corporal Blair's testimony in the matter of United States v. Henderson and Yelton, and a copy of the personnel files of Blair and Wollmershauser. Id. at 4.

On December 16, 2010, Magistrate Judge Frank M. McCarthy denied Embry's motion for discovery. Dkt. # 74. Magistrate Judge McCarthy noted the government's representation that there was nothing in either the personnel files or FBI-302 reports that would be discoverable under Brady, and that neither Blair nor Wollmershauser had ever been a suspect in the ongoing TPD investigation.[2] Because defense counsel was unable to point to any specific evidence sought, Embry was not entitled to discovery. However, Magistrate Judge McCarthy did approve payment for a transcript of Blair's testimony in United States v. Jeff M. Henderson & William A. Yelton, No. 10-CR-117-BDB.

---

[2]  Magistrate Judge McCarthy instructed the government to request confirmation from the prosecutor assigned to the TPD investigation that there was no information about Blair or Wollmershauser in any of the investigation files.

Prior to the ruling on the motion for discovery, Embry filed the motion for a new trial. Dkt. # 71. He argues that the government's failure to reveal information about Corporal Blair's relationship with and investigation on behalf of Henderson and Yelton constituted a violation of Brady, as that information constitutes impeachment evidence that could have cast doubt on Blair's testimony in the eyes of the jury. Embry further claims that there are "compelling reasons to lack confidence in the jury's verdict" because of Blair's suppression of evidence in the case, including the suppression of the impeachment evidence, "suppression of the identities of three witnesses he knew would cast doubt on his testimony," and "destruction of fingerprint evidence that could have exonerated Mr. Embry." Id. at 8. The government filed a response in opposition to the motion for new trial on the ground that the evidence regarding Blair was neither exculpatory nor material. Dkt. # 76. Defendant filed a reply asking the Court to withhold a final ruling on his motion for new trial until he received the transcript of the proceedings approved by Magistrate Judge McCarthy. Dkt. # 77. On December 22, 2010, defendant filed a "final evidentiary submission in support of his motion for new trial," submitting the testimony of Corporal Blair contained in the transcript. Dkt. # 79.

## II.

"Due process mandates disclosure by the prosecution of all evidence that favors the defendant and is material either to guilt or punishment." United States v. Velarde, 485 F.3d 553, 558 (10th Cir. 2007). In Brady, the Supreme Court interpreted those due process requirements to mean that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The disclosure obligations outlined in Brady apply

to both exculpatory evidence and evidence affecting witness credibility. See United States v. Bagley, 473 U.S. 667, 676 (1985)("[i]mpeachment evidence . . . as well as exculpatory evidence, falls within the Brady Rule"); see also Douglas v. Workman, 560 F.3d 1156, 1172-73 (10th Cir. 2009)("no distinction is recognized between evidence that exculpates a defendant and evidence that the defense might have used to impeach the State's witnesses by showing bias and interest")(internal citations omitted).

The duty to disclose extends to prosecutors, police, and other government investigators. Velarde, 485 F.3d at 558-59 (citing Kyles v. Whitley, 514 U.S. 419, 437-38 (1995)); see also United States v. Smith, 534 F.3d 1211, 1223 (10th Cir. 2008). Thus, a defendant may base a Brady claim on a government investigator's failure to disclose material evidence, even when the prosecutor personally did not know of that evidence. Velarde, 485 F.3d at 559. A defendant need not request information to trigger the disclosure mandate of Brady; "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles, 514 U.S. at 433. However, "Brady clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." See Goff v. Bagley, 601 F.3d 445, 476 (6th Cir. 2010).

Under Federal Rule of Criminal Procedure 33(b)(1), a defendant may file a motion for a new trial based on newly discovered evidence. A defendant who seeks a new trial under Rule 33 based on an alleged Brady violation must show that (1) the prosecution suppressed evidence, (2) the

6

evidence was favorable to the defendant, and (3) the evidence was material. Velarde, 485 F.3d at 558.[3]

### III.

Embry claims that he is entitled to a new trial based on Blair's alleged suppression of evidence. He states that if evidence of Blair's relationship with, and investigation and testimony on behalf of, Henderson and Yelton had been available at the time of trial, it might have changed the Court's decision to prohibit defense counsel from questioning witnesses about the ongoing TPD investigation. Dkt. # 71, at 5. Embry further argues that the information would have damaged the jury's opinion of Blair's credibility to the extent that the jury "might have very well acquitted Mr. Embry." Id. Embry's motion asserts that Blair engaged in suppression of three categories of evidence: the names of the men with him at the time of his arrest; fingerprint evidence; and the fact of Blair's relationship with Henderson and Yelton.

Claims regarding the first two categories of allegedly suppressed evidence are not properly before the Court. The prosecution's failure to disclose the names of the men with Embry at the time of his arrest was the subject of the first mistrial. Those names were produced to Embry in July 2010, prior to both his second and third trials. Although a party has three years to file a motion for new

---

[3] The test for a new trial based on Brady violations is distinct from that governing other motions for a new trial, which requires a showing that: (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by [defendant's] own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal. See, e.g., United States v. Herrera, 481 F.3d 1266, 1270 (10th Cir. 2007). In its response to the motion for new trial, the United States argues that because there was no Brady violation, the motion should be considered under this alternate standard. Dkt. # 76, at 4-5. However, "[w]here a Brady violation is claimed, the five-factor test is inapplicable." United States v. Torres, 569 F.3d 1277, 1281-82 (10th Cir. 2009).

7

trial on the basis of "newly discovered evidence," a motion for a new trial on any other grounds must be made "within 14 days after the verdict or finding of guilty." Fed. R. Crim. Pro. 33. A guilty verdict was returned and filed, and defendant was found guilty, on September 23, 2010. Dkt. # 66. Because Embry has presented the Court with no newly discovered evidence regarding the suppression of names of witnesses, any motion regarding that issue would be untimely. Thus, that portion of Embry's claim will not be considered. Similarly, Embry has presented no newly discovered evidence regarding any suppression of evidence by Blair related to alleged tampering with fingerprint evidence, and that part of Embry's claim will also not be considered.

Embry's remaining claim is that material evidence came to light after trial regarding Blair's friendship with and investigation on behalf of Henderson and Yelton. It does not appear that Embry had knowledge prior to trial about the information at issue. Because the duty to disclose extends to the police, Blair's withholding of knowledge is sufficient to form the basis of a Brady claim even without a showing that the prosecutor knew of that evidence. See, e.g., Smith, 534 F.3d at 1223. Embry's right to a new trial depends on whether the information about Blair's relationship with the other officers was material and favorable to Embry.

## A.

"Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Allen, 603 F.3d 1202, 1216 (10th Cir. 2010)(citing Velarde, 485 F.3d at 558-59)(10th Cir. 2010). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Thus, "[t]o be material under Brady, undisclosed information or evidence acquired through that information must be admissible." Banks v. Reynolds, 54 F.3d 1508, 1521 n.34 (10th Cir. 1995).

"Impeachment evidence is considered exculpatory for Brady purposes." Torres, 569 F.3d at1282. On a motion for new trial, it is not the role of the Court to reweigh evidence, assess witness credibility, or decide whether the newly discovered information establishes a defendant's guilt or innocence beyond a reasonable doubt. Banks, 54 F.3d at 1521. Instead, the "test is whether [the Court] can be confident that the jury would have returned the same verdict had the Brady violation not occurred." Id. The potential impact of undisclosed evidence is examined "in light of the whole record," and "what might be considered insignificant evidence in a strong case might suffice to disturb an already questionable verdict." Torres, 569 F.3d at 1282 (internal citations omitted). Thus, where testimony from one witness is central to the prosecution's case, courts are particularly sensitive to the importance of cross-examination as to the witness's credibility, and have required new trials where information relevant to that credibility came to light after trial. See, e.g., Torres, 569 F.3d at 1282-84 (citing Velarde for the proposition that "it may well be an abuse of discretion not to allow . . . cross-examination where the vast majority of inculpatory evidence is based on a lone witness's testimony").

Embry's motion is based on the fact of Blair's friendship with Henderson and Yelton, his role as a defense witness during their prosecution, and his investigation of witnesses that might testify against the officers. Dkt. # 71. Thus, the first question is whether the information at issue would have been admissible at Embry's trial.[4]

---

[4] The Court will undertake this analysis without regard to its earlier ruling on the government's motion in limine barring defense counsel from mentioning the ongoing investigation of the TPD. E.g., Dkt. # 42.

**B.**

Embry argues that information about Blair's relationship with and investigation on behalf of Henderson and Yelton could have been used to impeach Blair's credibility as a key witness for the prosecution. Under Rule 607 of the Federal Rules of Evidence, "[t]he credibility of a witness may be attacked by any party." Fed. R. Evid. 608(b) limits that rule by stating that "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime . . . may not be proved by extrinsic evidence." Defense counsel would not have been permitted to present extrinsic evidence at trial regarding a relationship between Blair and other TPD officers. However, it is within the discretion of the trial court to allow certain instances of prior conduct of a witness to be inquired into on cross-examination if probative of truthfulness or untruthfulness. Fed. R. Evid. 608(b). In the exercise of its discretion, a trial court is still bound by the other rules of evidence, including those involving the "relevance and probative value of evidence." See United States v. Beltran-Garcia, 338 F. App'x 765, 770 (10th Cir. 2009)(unpublished).[5] Evidence is relevant and therefore admissible if it has any tendency to make a fact of consequence more or less likely. See id.; Fed. R. Evid. 401-402. An officer's character for truthfulness is "clearly consequential" in a case where his testimony, in combination with other evidence, led to a defendant's conviction. Beltran-Garcia, 338 F. App'x at 771.

Thus, if the evidence about Blair's relationship with Henderson and Yelton impacts an assessment of Blair's character for truthfulness, it would have been admissible at trial for

---

[5] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

impeachment purposes. Embry relies on Velarde for his contention that Blair's associations could have been admitted as impeachment evidence. In Velarde, the defendant was convicted of sexually abusing a minor. 485 F.3d at 554. "No one else saw the alleged crime, and there was no corroborating medical evidence, so Mr. Velarde was convicted almost entirely on [the alleged abuse victim's] testimony." Id. Three years after his conviction, Velarde sought a new trial on the ground that the government violated Brady by failing to disclose material evidence. Id. at 554-55. Specifically, he claimed that the prosecution had received information two days prior to trial that the abuse victim was thought to have made false accusations regarding similar molestation by two other men. Id. at 555. Velarde claimed that "because the case hinged largely on whether [the girl's] testimony was credible, evidence that [she] falsely accused other men of inappropriate touching could have impeached [her] and led to a different result." Id. Therefore, he sought discovery about information in the government's possession as to the girl's other allegations, as well as a new trial.

The district court denied his motion for both discovery and a new trial, finding that any newly discovered evidence would not have been admissible. Id. at 557. However, on review, the Tenth Circuit concluded that the defendant was entitled to discovery. Id. at 561. The court said that Velarde had presented a "firm evidentiary basis" for believing that evidence about the girl's accusations existed, and that such evidence could have been used to cross-examine her. Id. at 561-63. Moreover, if the defendant had known of evidence that "near the time of trial she made . . . false accusations against two other men," there was a "reasonable probability that the result of the proceeding would have been different." Id. at 563. Thus, it would have been an abuse of discretion for the district court to refuse to allow cross-examination based on that information, and the

government's withholding of that evidence would have been a Brady violation. Defendant was therefore entitled to discovery to establish whether any such information had been suppressed. Id.

Similarly, in Torres, the Tenth Circuit considered a motion for new trial on the basis of newly discovered evidence about a confidential informant used by the government. After discovering that the informant had worked with the government on previous occasions and that she had misidentified the defendant in a conversation, the defendant argued that such evidence would have allowed him to successfully impeach the informant. 569 F.3d at 1279, 1282-83. The Tenth Circuit reversed the district court's decision that the information was nothing more than cumulative impeachment evidence. Id. at 1281. Instead, the court noted that "the government's case hinge[d] on the [confidential informant's] credibility," and that "the trial transcript reveal[ed] various deficiencies in the government's attempt to prove that Mr. Torres was indeed the person involved in the controlled buy." Id. at 1283. Although the defendant had been able to impeach the informant on various grounds at trial, the government had in turn rehabilitated the witness by offering testimony as to her reliability, interest in the community well-being, and drug-free status. Id. The court found that evidence as to the unreliability of the informant, such as "evidence demonstrating [the confidential informant's] breach of a prior agreement with the [Drug Enforcement Agency] in 2004," "allegations of criminal conduct occurring in 2005," and evidence regarding a misidentification of the defendant and his family, "raise[d] a reasonable probability that the outcome in th[e] case might have been different." Id. at 1283-84. The government's "near-total reliance on the testimony of the [confidential informant] require[d] a new trial" where the credibility of that witness was potentially impacted by newly-discovered evidence. Id. at 1284.

12

Thus, post-trial discovery of certain behaviors by a witness has been found relevant and admissible for cross-examination purposes. Embry has presented new evidence that Blair is a friend of, and engaged in independent investigations on behalf of, Henderson and Yelton, officers charged with criminal conduct.[6] The government correctly argues that the fact of Blair's friendship or association with those men alone is insufficient for impeachment purposes.[7] Dkt. # 76, at 3-4. However, Blair's alleged participation in an investigation designed to discredit witnesses testifying against criminally charged TPD officers goes beyond mere association. In Torres, the Tenth Circuit found that evidence of a confidential informant's previous breach of agreements with the government was appropriate for use in impeaching the informant's credibility and testimony at trial. 596 F.3d at 1283. Similarly, a police officer's work to discredit a government investigation could

---

[6] Embry was granted additional discovery regarding his allegations only in the form of the transcript of the September 22, 2010 hearing. At the hearing on Embry's motion for discovery, defense counsel was unable to articulate any specific evidence he expected to find in the other records sought; instead, he asked for discovery based simply on the possibility that the files might contain evidence of Blair's wrongdoing. That type of "fishing expedition" is prohibited by Velarde, 485 F.3d at 561, and this is not the type of case in which post-trial discovery has been granted.

[7] The Court does not find that an officer's association with officers charged with a crime speaks to capacity for truthfulness where the testifying officer has not been accused of any wrongdoing. Cf. United States v. Jones, No. 96-2061, 1998 WL 4355, at * 1 (10th Cir. 1998)(unpublished)(affirming decision of district court to restrict cross-examination of detective regarding prior investigation clearing him of wrongdoing on the ground that because the detective had been cleared, "any connection between the investigation and his propensity for truthfulness [was] tenuous at best," and the record contained nothing to support defendant's claim of wrongdoing on the part of the detective); United States v. Dickens, 775 F.2d 1056, 1058 (9th Cir. 1985)(rejecting impeachment by association because "association with a group engaged in criminal conduct is not itself a crime, and is, standing alone, not admissible for credibility impeachment purposes"); United States v. Singleterry, 646 F.2d 1014, 1018 (5th Cir. 1981)(noting the "long established rule that a defendant's guilt may not be proven by showing he associates with unsavory characters," and "admission of evidence of bad conduct of relatives or friends is error").

13

also impact a jury's assessment of that officer's credibility and character for truthfulness in a case prosecuted by the government. And where, as here, "the only witnesses against a defendant are police officers, anything that goes to their credibility is exculpatory and admissible." See United States v. Huerta-Rodriguez, No. CR 09-3206 JB, 2010 WL 3834061, at * 9 (D.N.M. Aug. 12, 2010)(citing Denver Policeman's Protective Ass'n v. Lictenstein, 660 F.2d 432, 436 (10th Cir. 1981)(allowing discovery into police files where discrepancy existed between events described by defendant and events described by officers, partly in recognition of "[t]he stark reality . . . that, in a swearing match between a police officer and a defendant accused of a crime . . . the police officer, with all else being equal, often prevails")). Thus, the Court finds that evidence that Blair engaged in independent investigations in support of the defense of Henderson and Yelton could impact a jury's assessment of his capacity for truthfulness and his credibility as an officer. That information about Blair therefore constitutes valid impeachment evidence. Magistrate Judge McCarthy granted Embry discovery in the form of the transcript of the hearing held September 22, 2010, at which Blair testified as a defense witness for Henderson and Yelton; that transcript could serve as the basis for cross-examination of Blair for impeachment purposes.

## C.

Even if the newly-discovered evidence is admissible, it is material only if defendant shows the "probability [of a different verdict] sufficient to undermine confidence in the outcome." See Allen, 603 F.3d at 1216. Here, the only two witnesses for the prosecution were Blair and Wollmershauser, and the only evidence presented was their eyewitness testimony. Thus, the government's case depended on the jury's assessment of the officers' credibility. The jury's inability to reach a verdict in Embry's second trial demonstrates that the government's case was

susceptible of doubt. Examining the potential impact of the previously-undisclosed evidence about Blair "in light of the whole record," the Court finds that this case is one where evidence impacting the assessment of officer credibility "might suffice to disturb an already questionable verdict." Torres, 569 F.3d at 1282 (internal citations omitted).

Velarde and Torres state that where the credibility of a key witness is called into question by newly-discovered evidence, a finding that the outcome of the trial could have been different is appropriate. The presence of corroborating witnesses like Wollmershauser make credibility-damaging material as to one witness far less likely to impact the outcome of trial. See United States v. Williams, 576 F.3d 1149, 1163-64 (10th Cir. 2009)(withholding personnel file as to prosecution witness was not a Brady violation because there was no evidence that the file contained material evidence and, even if it did contain damaging evidence, three additional officers testified as to the same version of events). However, given the presence of only one other officer at the time of Embry's arrest and the jury's prior difficulty in reaching a verdict on the basis of the evidence presented by the government, the Court finds that information concerning Blair's credibility could have impacted the outcome. Thus, Embry has met his burden of showing a reasonable probability that if that material "had been discovered . . . and presented at trial, the result of [his] case would [not] have been the same." Williams, 576 F.3d at 1163-64. The Court's confidence in the outcome of Embry's trial is impacted by the newly-discovered evidence, and the evidence is therefore

material to his defense. Because Blair suppressed material evidence about his investigation on behalf of Henderson and Yelton that was favorable to Embry, defendant is entitled to a new trial.[8]

**IT IS THEREFORE ORDERED** that the Motion of Demonte Embry for New Trial (Dkt. # 71) is **granted**.

**IT IS FURTHER ORDERED** that a **new trial** is scheduled for **January 18, 2011, at 9:15 a.m.**

**DATED** this 22nd day of December, 2010.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[8] To be clear, the Court's decision is not a license to inquire into the entire investigation of the TPD or to seek additional discovery. Embry is limited to use of the transcript of Blair's testimony on September 22, 2010 to cross-examine Blair as to his assistance in the defense of Henderson and Yelton.